UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                             Case No. 20-49216

JASON ROBERT WYLIE,                  Chapter 7
and LEAH S. WYLIE,
                                                     Judge Thomas J. Tucker

              Debtors.

_____/

**OPINION REGARDING THE CHAPTER 7 TRUSTEE'S
OBJECTION TO EXEMPTIONS**

**I. Introduction**

The issue before the Court in this Chapter 7 bankruptcy case is whether the Debtors may validly claim an exemption in their rights to federal and state income tax refunds, under the Michigan bankruptcy exemption statute, Mich Comp. Laws § 600.5451(1)(n), which exempts certain types of personal property listed in Mich Comp. Laws § 557.151 held jointly by a husband and wife as a tenancy by the entirety. The Chapter 7 Trustee argues that these Michigan statutes do not apply to the Debtors' rights to tax refunds. For the reasons stated below, the Court agrees with the Trustee, and will disallow the Debtors' claimed exemptions.

This case is before the Court on the Chapter 7 Trustee's objection to the Debtors' claimed exemptions (Docket # 51, the "Exemption Objections"). After holding a telephonic hearing, the Court entered an Order on March 31, 2021 ruling, in part, on the Exemption Objections.[1] This Opinion concerns only the remaining, unresolved part of the Exemption Objections — namely, the Debtors' claimed exemptions for federal and state tax refunds.

The Court has considered all of the written and oral arguments of the parties, and all of

---

[1] Order, Docket # 59.

the papers filed by the parties before the March 31, 2021 hearing.[2]

## II. Background

The Debtors in this Chapter 7 case are husband and wife. They filed their joint voluntary petition on August 27, 2020. In their amended Schedule A/B, filed on January 21, 2021, the Debtors disclosed, for the first time, "[p]otential" state and federal income tax refunds, in an "Unknown" amount.[3] The Debtors' full description of these state and federal tax refunds is:

> Potential income tax refunds. Returns showing amounts have been furnished to the trustee. The amounts of potential refunds are subject to the allowance by the State and IRS of 2018 and 2019 returns. The debtors do not admit that their right to potential refunds constitute property of the estate, but if it is, they claim an exemption in the potential refunds.[4]

As of the hearing date in this case, the Debtors' claimed rights to tax refunds were based on the Debtors' 2019 federal and state income tax returns, which the Debtors filed post-petition, on or about September 15, 2020. As of the hearing date, the Debtors had not yet filed their income tax returns for the year 2020. The Trustee alleged that in their 2019 tax returns, "the Debtors elected to apply aggregate State and Federal tax overpayments of $44,992.00 to the following tax year."[5] Additional details about the Debtors' tax returns are discussed later in this Opinion, in Part IV.B.6.

---

[2] The Court notes that well after the hearing, on May 18, 2021, the Trustee filed an affidavit and certain exhibits, in further support of the Exemption Objections. (Docket # 70). The Debtors filed an objection to the Trustee's May 18, 2021 filing, on May 20, 2021. (Docket # 71). Then the Trustee filed a response to the Debtors' filing and a corrected exhibit, all on May 25, 2021. (Docket ## 72, 73). Before making its decision today, the Court reviewed these post-hearing papers filed by the parties, but the Court has not relied on any of these papers in any way. It was not necessary to do so in order for the Court to decide the Trustee's Exemption Objections.

[3] Am. Schedule A/B (Docket # 40), at item 28.

[4] *Id.*

[5] Trustee's Suppl. Br. (Docket # 58) at 2.

2

On the same day they filed their amended Schedule A/B, January 21, 2021, the Debtors each filed an amended Schedule C, in which they each claimed an exemption in the "[p]otential income tax refunds." The Debtors each claimed as exempt 100% of their interests in the tax refunds, the current value of which they again stated as "Unknown." Each Debtor claimed the exemption under Mich Comp. Laws § 600.5451(1)(n). The Trustee timely objected to these claimed exemptions.

### III. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This contested matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), and 157(b)(2)(O).

### IV. Discussion

#### A. Some general principles about exemptions

Initially, the Court reiterates the following general principles regarding exemptions, which the Court has stated in prior cases:

> The Trustee . . . bear[s] the burden of proving that the Debtor's claimed exemptions . . . "are not properly claimed." *See* Fed.R.Bankr.P. 4003(c); *see also In re Demeter*, 478 B.R. 281, 286 (Bankr. E.D. Mich. 2012); *In re John*, 459 B.R. 684, 689 (Bankr. E.D. Mich. 2011). And the Court must construe exemptions liberally, in favor of the Debtor. *See Demeter*, 478 B.R. at 286; *In re Hanh Hieu Dang*, No. 11-10091, 2012 WL 2175778, at *2 (Bankr. W.D. Mich. June 13, 2012)("Exemptions are to be liberally construed in favor of a debtor.")(citing *Menninger v. Schramm (In re Schramm)*, 431 B.R. 397, 400 (B.A.P. 6th Cir. 2010) and Fed.R.Bankr.P. 4003(c)).
>
> The Court must determine Debtor's claimed exemptions as of the date he filed his bankruptcy petition. *See Lawless v. Newton (In re Lawless)*, 591 F. App'x 415, 417 (6th Cir. 2014); *Demeter*, 281 B.R. at 286; *Hanh Hieu Dang*, 2012 WL 2175778, at *2

("Exemptions are determined as of the filing date."); *In re Buick*, 237 B.R. 607, 609 (Bankr. W.D. Pa. 1999) and cases cited therein (holding that a debtor's entitlement to an exemption under § 522(d)(1) is "determined as of the filing date of . . . [a bankruptcy] petition").

*In re Sharkey*, 563 B.R. 655, 659 (Bankr. E.D. Mich. 2017) (quoting *In re Kizer*, 539 B.R. 316, 319 (Bankr. E.D. Mich. 2015)).

**B. The exemption dispute in this case**

**1. The Michigan exemption statutes at issue**

The Debtors have elected state law exemptions under 11 U.S.C. § 522(b)(3). Their claimed exemptions for their rights to tax refunds are based on Mich Comp. Laws § 600.5451(1)(n). That section is part of Michigan's exemption statute applicable to bankruptcy debtors, and states:

> A debtor in bankruptcy under the bankruptcy code . . . may exempt from property of the estate . . . the following property:
> . . .
>
> (n) **Property described in section 1 of 1927 PA 212, MCL 557.151**, or real property, **held jointly by a husband and wife as a tenancy by the entirety, except that this exemption does not apply with regard to a claim based on a joint debt of the husband and wife.**

Mich Comp. Laws § 600.5451(1)(n) (emphasis added).

It is clear from this statute that in order for this exemption to apply to personal property, the property must be "described in" Mich. Comp. Laws § 557.151; and it must be "held jointly by a husband and wife as a tenancy by the entirety."

Mich Comp. Laws § 557.151, in turn, states:

> **All bonds, certificates of stock, mortgages, promissory notes, debentures, or other evidences of indebtedness hereafter made payable to persons who are husband and wife, or made payable to them as endorsees or assignees, or otherwise,** shall

> be held by such husband and wife in joint tenancy unless otherwise
> therein expressly provided, in the same manner and subject to the
> same restrictions, consequences and conditions as are incident to
> the ownership of real estate held jointly by husband and wife under
> the laws of this state, with full right of ownership by survivorship
> in case of the death of either.

(Emphasis added).

Under Michigan law, there is a "presumption that the types of personal property listed in § 557.151 are held by spouses as tenants by the entirety[,] . . . [and] [t]o overcome this presumption requires express language to the contrary." *Lewiston v. Kohut* (*In re Lewiston*), 539 B.R. 154, 158-59 (E.D. Mich. 2015) (citing *DeYoung v. Mesler*, 373 Mich. 499, 504, 130 N.W. 2d 38 (1964)). With respect to personal property, "tenancies by the entirety are statutorily limited to certain kinds of property," namely, the types of property described in § 557.151. *See Lewiston*, 539 B.R. at 158.

## 2. The dispute in this case, and *Jahn v. Regan*

The Trustee argues that the Debtors' rights to tax refunds are not within the types of personal property described in § 557.151; *i.e.*, that they are not "bonds, certificates of stock, mortgages, promissory notes, debentures, or other evidences of indebtedness . . . made payable to persons who are husband and wife." It is clear that the Debtors' rights to tax refunds are not "bonds, certificates of stock, mortgages, promissory notes, [or] debentures," and the Debtors do not argue otherwise. Rather, the Debtors argue that their rights to tax refunds are "other evidences of indebtedness . . . made payable to" them, and they are husband and wife.

The Trustee disagrees, and relies heavily on a 1984 decision of the United States District Court for this district, *Jahn v. Regan*, 584 F. Supp. 399, 409-10 (E.D. Mich. 1984). In that case, the district court rejected plaintiffs' argument that a joint right to a tax refund (also sometimes referred to as a joint tax overpayment) was held as tenants by the entireties under § 557.151. The

court quoted from a decision of the United States Court of Appeals for the Sixth Circuit, *Hiller v. Olmstead*, 54 F.2d 5 (6th Cir. 1931), in which the court rejected an argument that the proceeds of an insurance policy held by a husband and wife were protected by the "other evidences of indebtedness" provision in § 557.151. Of particular relevance was the *Hiller* court's holding that:

> [I]t is manifest that the words "evidence of indebtedness," as used in the statute, refer only to instruments of the same general nature as bonds, mortgages, notes, and debentures with which they are associated. The maxim noscitur a sociis[6] applies.

*Hiller*, 54 F.2d at 7 (footnote added). In *Jahn v. Regan*, the district court followed this view of the statute, and held that "[a] tax refund or overpayment for a jointly filed tax return cannot be reasonably characterized as an 'evidence of indebtedness' in the same manner as a mortgage or bond." *Jahn*, 584 F. Supp. at 410 (footnote omitted). The court further reasoned that the joint tax "refund plaintiffs are pursuing is not a document of indebtedness of the government," and "[i]t is not even a negotiable instrument made payable to them." Therefore, the court held, § 557.151 did not apply. *Id.*

*Jahn* is directly on point, but the Debtors argue that it is not correct, and urge this Court not to follow it. The Debtors also characterize the ruling in *Jahn* as dictum, because the *Jahn* court went on to hold that even if § 557.151 did apply to plaintiffs' joint tax overpayment, so that it was held by plaintiffs as tenants by the entirety, the effect of such state law in that case would conflict with federal tax law in two specific ways identified by the court. As a result, "federal supremacy would overcome the State's characterization and avoid this co-ownership doctrine" and the statute would be "void pursuant to the Supremacy Clause of the Constitution, Art. VI,

---

[6] This is "[a] canon of statutory construction holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." Black's Law Dictionary 1084 (7th ed. 1999).

Sec. 2." *Id.* (citations omitted).

The Debtors' characterization of the *Jahn* court's interpretation of § 557.151 as dictum is incorrect. It is as much a holding as is the court's holding about the Supremacy Clause. In any case, it does not matter whether the *Jahn* court's interpretation of § 557.151 is dictum or an alternate holding. Either way, this Court is not bound by *Jahn*, as a matter of *stare decisis*. See *In re Cassini*, 614 B.R. 554, 556 n.1 (Bankr. E.D. Mich. 2020), and cases cited therein; *In re Harbin*, 626 B.R. 888 (Bankr. E.D. Mich. 2021) (same). Whether it is a holding or dictum, this Court is free to decide whether it is persuaded by the *Jahn* court's view of § 557.151.

The Sixth Circuit's decision in *Hiller* is a different matter. This Court views itself as bound to follow *Hiller's* holding about the meaning of § 557.151, unless and except to the extent that Michigan appellate decisions after *Hiller* have interpreted the Michigan statute in a way that is inconsistent with *Hiller*.

### 3. Interpreting the Michigan statute

The parties have not cited any Michigan Supreme Court decision that decided the specific issue before the Court, and the Court is not aware of any such decision. Because the Michigan Supreme Court has not decided the issue, the general rule is that this Court "is 'to discern, from all available sources, how [the Michigan Supreme Court] would respond if confronted with the issue.'" *In re Spradlin*, 231 B.R. 254, 256 (Bankr. E.D. Mich. 1999) (quoting *In re Akron-Cleveland Auto Rental, Inc.*, 921 F.2d 659, 662 (6th Cir. 1990)).

Under Michigan law, courts interpreting a statute must "ascertain and give effect to the intention of the Legislature." *Grand Rapids v. Crocker*, 189 N.W. 221, 222 (Mich. 1922). "A statute that is clear and unambiguous on its face needs no interpretation by a court; only statutes which are of doubtful meaning are subject to the process of interpretation." *Spradlin*, 231 B.R. at

256 (citing, among other cases, *Jones v. Grand Ledge Public Schools*, 84 N.W.2d 327 (1957)). "In construing a statute, 'effect must be given, if possible, to every word, sentence and section.'" *Id.* (quoting *Crocker*, 189 N.W. at 222).

As noted in Part IV.A of this Opinion, bankruptcy courts must construe exemption statutes liberally, in favor of the debtor. The same is true of Michigan courts, in interpreting Michigan exemption statutes. Michigan law requires the courts to construe exemption statutes liberally, in favor of the debtor, but courts also must be faithful to the wording of the statutes. *See Spradlin*, 231 B.R. at 258-59; *In re Richardson*, 621 B.R. 413, 417 (Bankr. E.D. Mich. 2020). *Spradlin* described Michigan law on this point:

> [T]he Michigan Supreme Court has explained that "[t]he law exempting property from execution, being remedial and resting upon a wise policy should, as far as practicable, be construed beneficially for the debtor." *Alvord v. Lent,* 23 Mich. 369, 371 (1871). *See also Slumpff v. McGuire & Hansen,* 253 Mich. 473, 475, 235 N.W. 224 (1931) ("The statutory exemption for household goods should be liberally construed as the modern tendency is to extend rather than to eliminate exemptions."); *White v. General Motors Corp.,* 431 Mich. 387, 429 N.W.2d 576 (1988); *People v. Prieskorn,* 424 Mich. 327, 381 N.W.2d 646 (1985); *Wilson v. Bartholomew,* 45 Mich. 41, 43, 7 N.W. 227 (1880) ("The policy of exemption is marked down in the Constitution and so far from being blind to it, the courts have felt it to be their duty to give it a liberal exposition."); *Stewart v Welton,* 32 Mich. 56, 59-60 (1875) ("[Exemption] statutes are remedial, and have not been strictly, but liberally construed for the purpose of carrying out the wise and humane objects in view.").
>
> However, "[t]he rule of liberal construction will not override other rules where its application would defeat the intention of the legislature or of the evident meaning of an act." *Sutherland Stat. Const.* § 60.01 (4th ed. 1986 & Supp.1991).

*Spradlin*, 231 B.R. at 258-59.

**4. Cases interpreting Mich. Comp. Laws § 557.151**

In trying to discern,"from all available sources," how the Michigan Supreme Court would

rule on the issue at hand, the Court will turn first to describing a number of cases interpreting Mich. Comp. Laws § 557.151. Many of these cases were cited by the parties, and the Court finds them instructive.

Section 557.151 was originally enacted in 1927, in section 1 of 1927 PA 212. While it has been recodified at various times over the years, the wording of this 1927 statute has never been amended.[7] An early case interpreting this statute is *People's State Bank of Pontiac v. Reckling*, 233 N.W. 353 (Mich. 1930). In that case, the Michigan Supreme Court held that a right to rent proceeds under a written lease was protected by § 557.151, as property held by a husband and wife as tenants by the entirety. The husband and wife jointly owned certain real estate as tenants by the entirety, and they leased the property to a tenant, under a written lease that provided that rent was to be made payable to both the husband and the wife. The court held that a creditor of the husband alone could not garnish rent proceeds from the tenant, because of § 557.151. Clearly implicit in the court's decision is the recognition that the written lease, which designated that rent was to be paid to the husband and wife, constituted "other evidence[] of indebtedness" that was "made payable to persons who are husband and wife" within the meaning of § 557.151.

Shortly after the *People's State Bank* decision, the United States Court of Appeals for the Sixth Circuit decided *Hiller v. Olmstead*, 54 F.2d 5 (6th Cir. 1931). As noted above, in *Hiller* the Sixth Circuit rejected the argument that the proceeds of an insurance policy held by a husband and wife were protected by the "other evidences of indebtedness" provision in § 557.151. *Hiller* involved a married man who owned and operated a retail store. His wife

---

[7] *See* 1927 Mich. Pub. Acts 433 (eff. Sept. 5, 1927); Mich. Comp. Laws § 13071(1929); Mich. Comp. Laws § 557.151 (1948); Mich. Comp. Laws § 557.151 (1970); Mich. Comp. Laws Ann. § 557.151 (West 2021).

contributed funds to the business, and both husband and wife provided services to the business. A fire occurred at the store, which resulted in the loss of merchandise. The merchandise was covered by an insurance policy that had been taken out in the names of the husband and his wife. After the husband was adjudicated "an involuntary bankrupt," the bankruptcy trustee received "a draft payable to" the debtor husband and his wife. The bankruptcy trustee claimed the right to the proceeds of this draft.

The husband and wife, on the other hand, argued that "immediately upon the happening of the loss the policy of insurance was converted from a simple contract into an 'evidence of indebtedness' and thus came under the provisions of [Mich. Comp. Laws § 557.151]." In making this argument, the husband and wife appeared to assume that before the fire loss occurred, the insurance policy did *not* constitute an "evidence of indebtedness payable to" the husband and wife. The Sixth Circuit seemed to make the same assumption, and went on to reject the husband's and wife's argument. The court reasoned:

> Not only would the happening of an event which created contract liability not convert such contract into an "evidence of indebtedness" if it had not such character before, thus changing its very nature, but **it is manifest that the words "evidence of indebtedness," as used in the statute, refer only to instruments of the same general nature as bonds, mortgages, notes, and debentures with which they are associated.** The maxim noscitur a sociis applies.

*Id.* at 7 (emphasis added). The court held that even after the fire loss occurred, neither the insurance policy nor its proceeds — the insurance check payable to the husband and wife — was protected by the "other evidences of indebtedness" provision of § 557.151.

In two cases decided soon after *People's State Bank* and *Hiller*, the Michigan Supreme Court held that the category of "other evidences of indebtedness" contained in § 557.151 does not include bank accounts or land contracts. *See McMahon v. Holland*, 244 N.W. 462, 463

(Mich. 1932) (bank accounts); *Hendricks v. Wolf*, 273 N.W. 282, 283-84 (Mich. 1937) (land contracts). The court in these cases reasoned that separate statutes already existed that addressed bank accounts and land contracts, and that this showed that the Legislature did not intend that those types of property fall within the category of "other evidences of indebtedness" in § 557.151. In *McMahon*, the Michigan Supreme Court also reasoned that "[h]ad it been intended that [what is now § 557.151] should include deposits in banks, they would doubtless have been mentioned." *McMahon*, 244 N.W. at 463. In *Hendricks*, the Michigan Supreme Court found its reasoning in *McMahon* also to apply to land contracts. The court also noted that what is now § 557.151 expressly includes "mortgages" but not "land contracts," and reasoned that "[i]t is not improbable that had the Legislature intended to include land contracts within the scope of the [statute], particular mention thereof would have been made." *Hendricks*, 278 N.W. at 284.

Much more recently, the Michigan Court of Appeals held in a published 1970 case that two checks made payable to a husband and wife, representing the payoff of a land contract that the husband and wife had jointly signed as vendors, *did* fall within the category of "other evidences of indebtedness" under § 557.151. *See Theisen v. Theisen*, 183 N.W.2d 373, 374 (Mich. App. 1970). The wife had died without endorsing the two checks. The court of appeals held that "[t]he checks in this case are controlled by [§ 557.151] since they are evidence of indebtedness made payable to persons who were husband and wife." *Id.* The court also found the case of *Kuklish v. Wohleben*, 84 N.W.2d 535 (Mich. 1957) to be "controlling," even though *Kuklish* applied the statute to a promissory note, which is one of the categories of property specifically listed in the statute.

After this came the U.S. District Court's 1984 decision in the *Jahn* case, cited by the Trustee and discussed above, holding that a husband's and wife's joint right to a tax refund was

not protected as an "other evidence of indebtedness" under § 557.151.

Next, two Michigan cases decided after *Jahn* require some discussion. Both cases are unpublished decisions of the Michigan Court of Appeals. Under the Michigan Court Rules, because they are unpublished opinions, these cases are not binding precedent, as a matter of *stare decisis*. But this Court may rely on them as persuasive authority.[8]

The first of these cases is *Zavradinos v. JTRB, Inc.*, No. 268570, 2007 WL 2404612 (Mich. Ct. App. August 23, 2007), *appeal denied*, 753 N.W.2d 60 (Mich. July 18, 2008). At

---

[8] Under Mich. Ct. R. 7.215(C)(1), "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis. Unpublished opinions should not be cited for propositions of law for which there is published authority." But as this Court has explained, most recently in *Energy Conversion Devices Liquidation Trust v. Ovonyx, Inc.* (*In re Energy Conversion Devices, Inc.*), 621 B.R. 674, 714 n.138 (Bankr. E.D. Mich. 2020) (quoting *In re Skymark Properties II, LLC*, 597 B.R. 363, 382 n.72 (Bankr. E.D. Mich. 2019),

> Michigan courts may consider unpublished opinions as persuasive authority. *See,e.g., People v. Green*, 260 Mich. [Ct.] App. 710, 680 N.W.2d 477, 484 n.5 (2004)("Although unpublished opinions are not binding precedent, [Mich. Ct. R.] 7.215(C)(1), we utilize it as a guide and view it as persuasive in light of the limited case law in this area."); *Cedroni Assocs., Inc. v. Tomblinson, Harburn Assocs.*, 290 Mich. [Ct.] App. 577, 802 N.W.2d 682, 709 & n.5 (2010) (Kelly, J., dissenting) (viewing a per curiam unpublished opinion of the Michigan Court of Appeals as "[m]ore persuasive and on point" than a published opinion relied on by the majority).

*McCallum v. Pixley* (*In re Pixley*), 456 B.R. 770, 788 n. 19 (Bankr. E.D. Mich. 2011); *see also Wells v. THB America, LLC* (*In re Clements Mfg. Liquidation Co., LLC*), 486 B.R. 400, 403 n. 8 (Bankr. E.D. Mich. 2012) (unpublished Michigan Court of Appeals decisions may be cited as persuasive authority); *Paris Meadows, LLC v. City of Kentwood*, 287 Mich.[Ct.] App. 136, 783 N.W.2d 133, 139 n. 3 (2010) (quoting *Mich. Envtl. Council & Pub. Interest Research Grp. in Mich. v. Mich. Pub. Serv. Comm'n.* (*In re Application of Ind. Mich. Power Co.*), 275 Mich. [Ct.] App. 369, 738 N.W.2d 289 (2007)) (unpublished opinions of the Michigan Court of Appeals may be "considered instructive or persuasive"); *Cox v. Hartman*, 322 Mich.[Ct.] App. 292, 911 N.W.2d 219, 228 (2017) (same).

issue in *Zavradinos* were two brokerage accounts owned jointly by a husband and wife, which held stocks. As the court of appeals noted, there was no dispute by the parties "that the accounts are within the categories of property governed by" § 557.151, and the court noted that "the classes of property named in the statute . . . includes stocks and bonds." *Zavradinos*, 2007 WL 2404612, at *1; *see also Lewiston*, 539 B.R. at 160 (discussing *Zavradinos*). Because the applicability of § 557.151 was undisputed, the court had no occasion to discuss that question, and did not. Rather, the dispute was whether there was sufficient evidence presented by the creditor to overcome the presumption that the accounts were held in an estate by the entireties. The trial court had held that there was sufficient evidence and that the presumption was rebutted; but the court of appeals disagreed, and reversed the trial court on that point. So the court of appeals held that the stock brokerage accounts were protected by § 557.151. *Id.* at *3.

The *Zavradinos* creditors sought leave to appeal in the Michigan Supreme Court, but leave was denied. *Zavradinos v. JTRB, Inc.*, 753 N.W.2d 60 (Mich. 2008). Four justices of that court wrote opinions; one concurring in the denial of leave to appeal, and three dissenting. Two of the dissenting opinions noted that the parties did not dispute that the brokerage accounts fall within the categories of property listed in § 557.151. *See* 753 N.W.2d at 66 (Corrigan, J., dissenting); 74 (Markman, J., dissenting). None of the justices discussed that issue.

The second, and more recent, unpublished Michigan Court of Appeals case is *Huntington National Bank v. Steuer*, No. 346998, 2020 WL 4030451 (Mich. Ct. App. July 16, 2020), *appeal denied*, 956 N.W.2d 187 (Mich. March 30, 2021). *Steuer* was an action by a state court receiver seeking to avoid, as fraudulent transfers, certain transfers of property made by a judgment debtor to his wife and his wife's trust. The parties agreed, and the Michigan Court of Appeals recognized, that such transfers were not avoidable under the Michigan Uniform Fraudulent

Transfer Act, if the property transferred was exempt under § 557.151. *See Steuer*, 2020 WL 4030451, at *4.

Two categories of property were at issue in *Steuer*. The first category included shares of stock and proceeds from the sale of the stock, which sale was prompted a forced redemption by the issuing company. The court of appeals concluded, based on certain stock acquisition documents and tax records, that "[t]he stock was held by [the husband and wife] as tenants by the entirety, with proceeds payable to them as husband and wife, and subject to a forced redemption." *See id.* at *5 & n.7. The court also found that certain tax documents identified the husband and wife as recipients of the money from the stock sale, jointly, and as tenants by the entirety. *Id.* at *5.

The *Steuer* court drew an analogy to its earlier published decision in *Theisen*, discussed above. It described *Theisen* as holding that "checks payable jointly to a married couple are 'evidence of indebtedness made payable to persons who [are] husband and wife' under MCL 557.151." *Id.* The court found the "whole of the [stock sale] transaction" before it to be "analogous" to the checks discussed in *Theisen*. *Id.* The court explained its ruling this way:

> In this case, the stock sale occurred on December 4, 2012, and tax documents identify David and Brenda as recipients of the monies. The document refers to "proceeds from broker and barter exchange transactions." It specifically lists Sun Healthcare as the "payer" and David and Brenda as the recipients as tenants by the entirety. While the appellate record does not contain a jointly payable check as in *Theisen*, . . . it does contain clear and uncontroverted evidence of a broker exchange resulting in proceeds being transferred from the "payer" to the husband and wife recipients, jointly. The uncontroverted evidence shows that when Sun Healthcare initiated a forced redemption, there was "indebtedness" "payable" to Brenda and David as tenants by the entirety. In essence, we conclude that the whole of the Sun Healthcare transaction was analogous to the check as discussed in *Theisen*. The stock was held by David and Brenda as tenants by the entirety, with proceeds payable to them as husband and wife, and subject to a forced redemption. We

> conclude that under the authority of MCL 557.151, *Theisen*, and
> *DeYoung* [*v. Mesler*, 130 N.W. 38 (1964)], David and Brenda held
> the stock and its resultant proceeds by the entirety.

*Id.* (footnotes omitted).

In the passage just quoted, the *Steuer* court seemed to identify the "indebtedness" that was "payable" to the husband and wife as being both the stock and the sale proceeds of the stock owing by the stock issuer, Sun Healthcare, when it redeemed the stock owned jointly by the husband and wife. In holding that the stock was held as tenants by the entirety protected by 557.151, the court did not mention there being any "certificates of stock," which is a category of property expressly covered by § 557.151. The stock may have been uncertificated, but the *Steuer* court did not say whether it was or not. If there were no "certificates of stock" then the *Steuer* case must be viewed as holding that the stock fell within the phrase "other evidences of indebtedness" under § 557.151, and that this is why the stock and its sale proceeds were protected under that statute.

In the passage quoted above and in its accompanying footnotes, the *Steuer* court cited, as proof that the stock was owned by the husband and wife as tenants by the entirety, all of the following: certain unspecified "tax documents;" certain unspecified "earlier stock-acquisition documents;" and certain unspecified "stock documents." The last two types of proof were cited in two footnotes omitted from the above-quoted passage, where the court stated that "[t]he earlier stock-acquisition documents also list David and Brenda as tenants by the entirety[;]" and that "Appellee, on appeal, cites to nothing contradicting the stock documents referred to by appellants." *Id.* at *5 nn.7-8.

A second category of property involved in *Steuer* was income tax refund checks. The court held that three income tax refund checks that were payable jointly to the debtor husband

15
20-49216-tjt    Doc 74    Filed 05/28/21    Entered 05/28/21 16:24:15    Page 15 of 20

and his wife "were held by the entireties" and protected under § 557.151. The court cited *Theisen* and *DeYoung* in support of this conclusion. *Id.* at *7. The checks were federal income tax refunds obtained after the husband and wife filed joint amended tax returns, which amended joint tax returns they had filed in prior years. *See id.* at *8.

**5. This Court's conclusions drawn from the cases**

From the cases discussed above, the Court draws the following conclusions relevant to this case.

**First**, "other evidences of indebtedness" that are "made payable to" a husband and wife, within the meaning of Mich. Comp. Laws § 557.151, *can* include the following:

1. Checks payable jointly to the husband and wife, including tax refund checks. *Theisen* (checks paying off a land contract); *Steuer* (federal income tax refund checks).[9]

2. A written real estate lease which obligates a tenant to pay rent to both husband and wife, at least when the real estate is owned by the husband and wife as tenants by the entirety. *Peoples State Bank.*

3. Arguably, at least, stock brokerage accounts owned jointly by a husband and wife. *Zavradinos*.

4. Shares of stock owned jointly by husband and wife. *Steuer*.

**Second,** "other evidences of indebtedness" that are "made payable to" a husband and wife, within the meaning of Mich. Comp. Laws § 557.151, do *not* include the following:

1. Bank accounts/bank deposits. *McMahon*.

---

[9] It appears from these more modern Michigan Court of Appeals decisions that the 1931 Sixth Circuit decision in *Hiller* is no longer good law, to the extent that *Hiller* held that an insurance check payable to a husband and wife was not an "other evidence[] of indebtedness" under § 557.151. Under *Theisen* and *Steuer*, today such a check would be viewed as covered by § 557.151.

2. Land contracts. *Hendricks*.

3. An insurance policy. *Hiller*.

4. A right to a tax refund (a.k.a. tax overpayment) that is not presently in the form of a tax refund check. *Jahn*.

**Third,** no case has held that the right to a tax refund (a.k.a. tax overpayment) is or can be considered to fall within the category of "other evidences of indebtedness" that is "made payable to" a husband and wife, within the meaning of Mich. Comp. Laws § 557.151. The only case to decide that issue, *Jahn*, held that such a right is ***not*** covered by this statute.

This Court agrees with *Jahn*. At most, based on the *Steuer* and *Theisen* cases, the only time a right to a tax refund (or to a credit for a tax overpayment) *might* fall under § 557.151 is when it is in the present form of a tax refund check, payable jointly to a husband and wife. Otherwise, there are nothing in existence that falls within the statutory phrase "other evidences of indebtedness." As the court in *Jahn* put it, after quoting *Hiller's* holding that "the words 'evidence of indebtedness,' as used in the statute, refer only to instruments of the same general nature as bonds, mortgages, notes, and debentures with which they are associated," *Hiller*, 54 F.2d at 7,[10]

> A tax refund or overpayment for a jointly filed tax return cannot be reasonably characterized as an "evidence of indebtedness" in the same manner as a mortgage or bond. The refund plaintiffs are pursuing is not a document of indebtedness of the government. It is not even a negotiable instrument made payable to them. Therefore, plaintiffs' joint tax overpayment is not within [Mich. Comp. Laws] § 557.151 and not held by them as tenants by the

---

[10] The Court views this holding of *Hiller* as still good law today, and therefore as binding on this Court. No Michigan case decided after *Hiller* can be viewed as contradicting this holding in *Hiller*. Instead, the post-*Hiller* Michigan cases are properly viewed as merely adding certain categories of property to the list of what is included in the statutory phrase "evidences of indebtedness." *See Theisen* (checks payable to husband and wife); *Zavradinos* (stock brokerage accounts and shares of stock); *Steuer* (shares of stock and the sale proceeds of same, plus tax refund checks).

entireties.

*Id.* at 410 (footnote omitted).

To the extent the Debtors in this case argue that a filed tax return can be considered within the phrase "other evidences of indebtedness,"[11] the Court must reject that argument. A filed tax return is not an "other evidence[] of indebtedness" that is "payable to" the husband and wife. No case comes close to holding that it is. And a joint tax return filed by a husband and wife is not a negotiable instrument, such as the checks in *Steuer* and *Theisen*; nor is it any form of agreement, with the government or any other party, such as the written lease in *Peoples State Bank*, or the brokerage account agreements in *Zavradinos*. Nor is a tax return a form of property like the shares of stock in *Steuer*. Rather, even though tax returns are required by law to be filed, a joint tax return ultimately is just a written statement by a husband and wife, making unilateral assertions about their income, deductions, credits, and tax liability. As such a unilateral statement, the tax return is nothing like anything that Michigan cases have recognized as being protected under § 557.151.

The Court concludes that the Debtors' rights to a credit/refund for tax overpayments are not protected by Mich Comp. Laws § 557.151, and therefore cannot be claimed as exempt under Mich Comp. Laws § 600.5451(1)(n). It is undisputed that as of the bankruptcy petition date in this case, there was no tax refund check payable to the Debtors in existence. And the Debtors' filed joint tax returns are not "other evidences of indebtedness" "made payable to" the Debtors, who are husband and wife, within the meaning of § 557.151.

---

[11] In oral argument during the March 31, 2021 hearing, the Court asked Debtors' attorney this question: "the right to a tax refund — what exactly is the evidence of indebtedness when the asset you're trying to exempt is a right to [a] refund?" Debtors' attorney replied, in pertinent part, that "the evidence is in a tax return; . . . also the evidence is in the records of the taxing authorities; it's in bytes in their computers . . . ." (Audio recording of March 31, 2021 hearing (.mp3 file at Docket # 60) at 27:33 - 28:11).

The Court's ruling today is the most reasonable interpretation of the statute, and the interpretation most consistent with the intent of the Michigan legislature, especially when the matter is viewed in light of the cases discussed above. Based on the cases discussed above, the Court concludes that the Michigan Supreme Court would interpret § 557.151 the way this Court does today.

**6. Application to this case**

As noted above, it is undisputed that on the date the Debtors filed their bankruptcy petition, August 27, 2020, there was no state or federal tax refund check payable to the Debtors in existence. And the following facts are undisputed, regarding the tax returns that the Debtors filed before filing their bankruptcy petition. The Debtors filed their joint 2018 tax returns on or about March 31, 2020 (*i.e.*, pre-petition),[12] and those returns showed tax overpayments totaling $39,273.00. Those consist of an overpayment of $21,317.00 for federal income tax, all of which the Debtors elected to have applied to their 2019 federal estimated tax, plus an overpayment of $17,956.00 for Michigan income tax, all of which the Debtors elected to have applied to their 2019 state income tax return.[13] This was the state of affairs as of the bankruptcy petition date. The fact that the Debtors filed their 2019 tax returns after the petition date in this case has no bearing on the Debtors' claimed exemptions at issue. This is so first, because those tax returns were filed post-petition, and second, because, as the Court has held, the tax returns do not qualify as "other evidences of indebtedness" that were "payable to" the Debtors, under § 557.151.

Exemptions are fixed, and must be determined, as of the date on which the Debtors filed

---

[12] Trustee's Suppl. Br. (Docket # 58) at 2.

[13] These facts are undisputed, and are taken from the copies of the Debtors' filed 2018 federal and Michigan income tax returns, which the Trustee filed as Exhibit B to his Supplemental Brief filed before the hearing, on March 25, 2021 (Docket # 58).

their bankruptcy petition. *See* cases cited in Part IV.A of this Opinion; *see also In re Hamacher*, 535 B.R. 180, 182 (Bankr. E.D. Mich. 2015) ("[E]xemptions are determined as of the bankruptcy petition filing date.") (citations omitted); *Lasich v. Wickstrom* (*In re Wickstrom*), 113 B.R. 339, 343-44 (Bankr. W.D. Mich. 1990) ("[B]ankruptcy exemptions are fixed on the date of filing" and that means that "*we focus only on the law and facts as they exist on the date of filing the petition*") (italics in original) (citations omitted) (quoting *Armstrong v. Peterson* (*In re Peterson*), 897 F.2d 935, 937 (8th Cir. 1990)) (also citing *White v. Stump*, 266 U.S. 310, 313 (1924)).

Based on the facts and the state of affairs as of the bankruptcy petition date, the Court must disallow the Debtors' claimed exemptions in their rights to income tax refunds.

## V. Conclusion

For the reasons stated in this Opinion, the Court will enter an order sustaining the Chapter 7 Trustee's Exemption Objections with respect to the Debtor's rights to tax refunds, and disallowing the Debtors' claimed exemptions in the tax refunds.

**Signed on May 28, 2021**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**